1

2

3

4                          **UNITED STATES DISTRICT COURT**

5                              **DISTRICT OF NEVADA**

6

7   BERYL HARTER, et al.,                      )
                                               )
8                            Plaintiffs,       )        Case No. 2:12-cv-00084-MMD-PAL
                                               )
9   vs.                                        )             **ORDER**
                                               )
10  CPS SECURITY (USA), INC., et al.,          )        (Mot. Compel - Dkt. #52)
                                               )        (Emg. Mot. Strike - Dkt. #61)
11                           Defendants.       )        (Emg. Mot Stay - Dkt. #62)
                                               )
    _____        )

12

13          The court conducted a hearing on Plaintiffs' Motion to Compel (Dkt. #52), Defendants'

14  Emergency Motion to Strike Plaintiffs' Withdrawn Motion to Disqualify Defendants' In-House

15  Attorney, Jim D. Newman, from Plaintiffs' "Partial Opposition" to Petition for Admission Pro Hac

16  Vice (Dkt. #61), and Defendants' Emergency Motion to Temporarily Stay All Activity in Case Pending

17  Determination of Scope of Representation by In-House Defense Counsel (Dkt. #62) on December 20,

18  2012.  Leon Greenberg appeared on behalf of the Plaintiffs, and Carol Zucker and Timothy Roehrs

19  appeared on behalf of the Defendants.  Jim Newman, whose pro hac vice is on file, was also present on

20  behalf of the Defendants.  The court has considered the moving and responsive papers and the

21  arguments of counsel, and clarified that all three matters are referred to the undersigned for decision.

22                                  **BACKGROUND**

23          The Complaint (Dkt. #1) in this case was filed January 18, 2012, and involves an action under

24  the Fair Labor Standards Act ("FLSA").  The named Plaintiff, Beryl Harter, was employed as a "trailer

25  guard" by Defendants CPS and worked at construction sites to provide security services.  He alleges

26  that he and other similarly situated trailer guards were required to reside in a small one-room trailer,

27  without running water.  Trailer guards were paid the minimum hourly wage for "patrol time" at the site,

28  and expected to remain at the trailer for eight hours every night, seven days a week "on call."  Plaintiffs

allege that trailer guards were not compensated for their "on call" work unless they were required to respond to security alarms at the construction site.  Because of the number of limitations the Defendants imposed on the activities of trailer guards during "on call" time, Plaintiffs assert the time is compensable for FLSA minimum wage purposes.  Plaintiffs also claim that the Defendants improperly deducted $30/wk. from each trailer guard's paycheck for a maintenance fee for the trailer provided to each trailer guard.  This deduction is alleged to violate the minimum wage requirement of the FLSA as the trailer guards were only paid minimum wage, and the $30/wk. deduction compensated trailer guards below minimum wage.

## DISCUSSION

**I.     Motion to Compel (Dkt. #52).**

Plaintiffs' Motion to Compel was initially filed as both a Motion to Disqualify Defendants' Counsel, Jim D. Newman and to Compel His Deposition Testimony.  The Motion to Disqualify was withdrawn before the hearing.  Counsel for Plaintiff indicated that he withdrew the motion to disqualify in order to conduct sufficient discovery to support a record for a potential future motion to disqualify.

Mr. Newman is an attorney with Knee, Ross & Silverman, LLP, was outside counsel for the Defendants for a number of years, and is currently in-house counsel.  He was designated as lead trial counsel in a similar trailer guard/FLSA action filed by counsel for Plaintiffs in this district in *Tallman v. CPS*, 2:09-cv-00944-PMP-PAL.  His pro hac vice application is on file in this case and partially opposed by counsel for Plaintiffs.  Counsel for Plaintiffs seeks to depose Mr. Newman in this case because Plaintiffs assert that Mr. Newman has relevant knowledge about whether the Defendants wilfully violated the FLSA.  Plaintiff also claims that Mr. Newman has relevant knowledge to support or refute Defendants' affirmative defenses.  Specifically, Defendants' Second Affirmative Defense alleges that the applicable statute of limitations is two years.  However, if Defendants are found to have wilfully violated the FLSA, the applicable statute of limitations is three years prior to the commencement of the lawsuit.  Defendants' Fourth Affirmative Defense alleges they acted in good-faith reliance upon a written opinion by the U.S. Department of Labor ("USDOL" or "DOL").  This is an affirmative defense found in U.S.C. § 259, which constitutes a complete "safe harbor" defense from FLSA liability.  Finally, Defendants have asserted a Seventh Affirmative Defense based on 29 U.S.C. §

1   260, that Defendants' good faith and reasonable belief that they did not violate the FLSA gives the

2   court the discretion to relieve Defendants from liability for liquidated damages.

3          Plaintiffs relies on Mr. Newman's March 29, 2009, letter to Tina Chan, an Investigator with

4   USDOL, which is attached as Exhibit "A" to his motion.  The letter indicates that Mr. Newman was

5   following up on recent telephone conversations with Ms. Chan concerning the firm's client, Defendant

6   Construction Protective Services, Inc.  The letter states that it was written at Ms. Chan's request to

7   provide her with additional information "concerning the evolution of CPS's on-call compensation

8   policy for Trailer Guards and documents pertaining to related litigation."  Plaintiffs claim that this letter

9   establishes Mr. Newman's awareness of information relevant to Defendants' knowledge of the

10  USDOL's views of the FLSA employment practices at issue in this case, and Defendants' conduct in

11  communicating with and furnishing information to the USDOL relevant to the FLSA issues involved in

12  this lawsuit.

13         The motion acknowledges that Defendants may not be supporting their affirmative defenses

14  based on any legal advice Mr. Newman provided.  However, because Defendants have refused to

15  produce a witness for a Rule 30(b)(6) deposition on their affirmative defenses, counsel for Plaintiff

16  claims it is impossible to evaluate whether Mr. Newman's communications with Defendants are, or are

17  not, "properly subject to examination by the Court at trial", and therefore, not privileged.  Even if Mr.

18  Newman's communications with the Defendants are covered by the attorney-client privilege, his

19  communications with the DOL are not, and he should be compelled to testify at deposition concerning

20  these communications.

21  **II.      Defendants' Emergency Motion to Strike (Dkt. #61).**

22         Defendants filed a single document requesting two forms of relief: (1) an Emergency Motion to

23  Temporarily Stay all Activity in Case Pending Determination of Scope of Representation by In-House

24  Defense Counsel (Dkt. #62). and (2) Emergency Motion to Strike [Dkt. #57] Plaintiffs' Partial

25  Opposition to Petition for Admission Pro Hac Vice.  Defendants requested emergency relief in the form

26  of a stay of all activity in this case, including all discovery and other motion work until Mr. Newman's

27  pro hac vice application is decided.  Defendants also asked that the court strike Plaintiffs' withdrawn

28  motion to disqualify Mr. Newman, and Plaintiffs' partial opposition to Mr. Newman's pro hac vice

1    application.  Defendants argue that Plaintiffs' disqualification motion and response to the pro hac vice

2    application were brought prematurely and without proper grounds.  Defendants also accuse Plaintiffs of

3    engaging in abusive and harassing litigation tactics designed to prejudice Defendants' ability to defend

4    themselves with their counsel of choice.  Plaintiffs filed these matters while Defendants were preparing

5    for the December 11, 2000, trial in *Tallman v. CPS Security*, 2:09-cv-00944-PMP-PAL, which raises

6    nearly identical claims involved in this case.  Mr. Newman is lead trial counsel for the CPS Defendants

7    in *Tallman*.  Defendants claim that Plaintiffs improperly seek to address the withdrawn motion to

8    disqualify Mr. Newman before the court "without incurring the risk of sanctions" which are

9    "shenanigans" the court should not condone.

10    Defendants claim that moments after the motion to disqualify Mr. Newman was filed in this

11    case, Plaintiffs filed a notice of Mr. Newman's deposition.  Plaintiffs had not previously indicated that

12    Mr. Newman was a necessary witness or requested to set his deposition.

13    Defendants represent that Mr. Newman is a California-licensed attorney who has represented

14    CPS and its management team in employment matters, including wage and hour class-action lawsuits in

15    California and Nevada for more than ten years.  In October 2010, he was retained as its in-house general

16    counsel.  Mr. Newman was admitted pro hac vice in the *Tallman* case, along with Ms. Imara, the other

17    in-house lawyer employed by CPS.  The *Tallman* case was set for jury trial beginning December 11,

18    2012, with a November 19, 2012, deadline for a number of substantial pretrial filings.

19    Plaintiffs filed the motion to disqualify Mr. Newman in this case before his pro hac vice

20    application was filed.  Counsel for both sides met and conferred with Defendants' counsel taking the

21    position that the motion to disqualify and opposition to pro hac vice application were premature and

22    unfounded.  Defense counsel threatened a request for sanctions if the motion to disqualify was not

23    withdrawn.  Counsel for Plaintiff withdrew the motion to disqualify, but sent a letter indicating he

24    expected to proceed with the motion to compel Mr. Newman's deposition and motion to disqualify him

25    as trial counsel.

26    On the merits, counsel for Defendants claim that CPS designed its trailer guard program to

27    comply with applicable DOL regulations governing in-residence employees.  Although Defendants

28    have asserted three affirmative defenses based on DOL rulings and regulations, Defendants have never

1   based these defenses on their reliance on the advice of counsel concerning DOL legal requirements.

2   CPS requested an opinion from DOL in 1997, whether their trailer guard program was lawful, and

3   received a letter from DOL Wage and Hour Division Assistant District Director, Charles Striegel,

4   approving its practices.  Between 2002, and 2009, DOL audited CPS's trailer guard practices a number

5   of times.  However, to Defendants knowledge, at no time did DOL advise CPS that its trailer guard

6   program failed to comply with applicable wage and hour laws and regulations.

7         In this case, Defendants argue a two-year statute of limitation applies if the trailer guard

8   compensation program is found to be unlawful, but not a wilful violation.  Defendants base this defense

9   on their reasonable belief that their actions were lawful because the DOL opined CPS practices were

10  lawful in similar instances, and had audited CPS trailer guard pay practices a number of times without

11  finding a violation.  Defendants have also asserted as a Fourth Affirmative Defense the "safe harbor

12  defense" under 20 U.S.C. § 259, which is based on the written administrative ruling provided to CPS by

13  Mr. Striegel in 1997.  Defendants assert that Mr. Striegel's letter provides a complete defense to

14  liability even if the court finds the trailer guard agreements are unlawful under the FLSA.  Finally,

15  Defendants' Seventh Affirmative Defense is based on the same facts.  Under 29 U.S.C. § 260, a jury

16  finding that CPS acted in good faith in implementing its trailer guard compensation program would

17  preclude the imposition of liquidated damages.

18        Defendants acknowledge that one of the factors a jury may consider in determining whether a

19  Defendant acted in good faith is reliance upon the advice of counsel.  However, CPS has never claimed

20  that it acted in good faith because it relied on the advise of its counsel.  Rather, CPS claims here, as it

21  does in the *Tallman* case, that it acted in good faith because it relied upon the advice of the USDOL, not

22  on the advice of its own counsel.

23        Defendants filed these two emergency motions to prevent prejudice from having to respond to

24  discovery while Plaintiffs seek to interfere with their relationship with counsel of their choice.

25  Defendants claim that a "mountain of discovery" propounded by Plaintiffs remain pending, and that

26  there are a number of discovery disputes "percolating at this time."  Defense counsel accuses Plaintiffs'

27  counsel of waiting until the very last month of discovery to propound, on a "shotgun basis" a substantial

28  amount of both written discovery and deposition notices.  Defendants believe voluminous discovery

1   was propounded during the last month of discovery to harass them while they were preparing the

2   *Tallman* case for trial.  Defense counsel recognize that an additional discovery extension would likely

3   be necessary if the court grants their request for a stay.  A proposed stipulation was drafted, but put

4   aside when Plaintiffs filed this motion to compel and disqualify on October 31, 2012.

5          Additionally, while Plaintiffs have propounded voluminous discovery and requested a number

6   of depositions, the five opt-in Plaintiffs have indicated that they would not provide initial disclosures

7   other than damages calculations, respond to pending Rule 34 document requests, or appear for

8   depositions.  Named Plaintiff's Harter's deposition was scheduled for November 8, 2012, but taken off

9   calendar after Plaintiffs' motion to disqualify and compel "necessitated a halt to discovery."  There are

10  additional discovery disputes related to the court ordered depositions of Mr. Barnes and Mr. Coffee.

11  Defendants assert that the deposition of Mr. Coffee, and all additional discovery in this case cannot

12  proceed until the permissible scope of Mr. Newman's representation has been settled.  Defendants are

13  not asking the court to resolve these discovery disputes at this time, but bring them up "because they

14  illustrate that Plaintiffs have sought to interfere with Defendants' choice of counsel in the midst of this

15  case having collapsed into a discovery mess."

16         For these reasons the court should temporarily stay discovery and all other activity in this case

17  until deciding Plaintiffs' partial opposition to Mr. Newman's pro hac vice application and Defendants'

18  motion to strike.  Defendants also ask that Plaintiffs' withdrawn motion to disqualify be stricken from

19  the record, and as an attachment to Plaintiff's partial opposition to Mr. Newman's pro hac vice

20  application.  Defendants emphasize that Plaintiffs have not established that Mr. Newman is likely to be

21  a necessary witness at trial.  Defendants claim that in order to establish a predicate to disqualify Mr.

22  Newman, the Plaintiffs should have first noticed Mr. Newman's deposition, obtained Defendants'

23  response to the requested notice of the deposition, and met and conferred before filing the motion to

24  disqualify.

25         Defendants also claim that Plaintiffs cannot meet the high standard established by the Eighth

26  Circuit in *Shelton v. American Motors Corp.*, 805 F.2d, 1323 (8th Cir. 1986), recently adopted by the

27  Nevada Supreme Court Case, for deposing and opposing party's counsel.  Assuming Mr. Newman's

28  deposition was set or ordered by the court and taken, the parties would have to address the attorney-

1    client privilege.  Defendants argue that only when all of these steps had been completed could Plaintiffs

2    have properly brought a motion to disqualify Mr. Newman under Rule 3.7 of the Nevada Rules of

3    Professional Conduct.  Finally, Defendants claim that Plaintiffs could only seek to disqualify Mr.

4    Newman as trial counsel if, and only if, Mr. Newman had requested and received permission to practice

5    pro hac vice.

6          Defendants dispute that Mr. Newman has knowledge of non-privileged facts or communications

7    with the USDOL relevant or discoverable to Defendants' good-faith affirmative defenses.  Defendants

8    describe the letter from Mr. Newman to Ms. Chan as "a piece advocating on behalf" of CPS and

9    transmitting information to the DOL.  Plaintiffs have not attempted to develop facts to suggest Mr.

10   Newman has knowledge and is a necessary witness by less intrusive means, such as by propounding

11   interrogatories or deposing Ms. Chan.  Defendants attach exhibits to their motion to establish that Mr.

12   Newman was not CPS's "point person" with DOL with respect to the audits DOL conducted.

13   Defendants also argue Plaintiffs' withdrawn motion to compel does not address the substantial hardship

14   test of Rule 3.7(a)(3).  Defendants claim that disqualification of Mr. Newman would result in

15   substantial hardship to them because he has years of experience representing CPS and litigating wage

16   and hour cases of this type.  Disqualifying Mr. Newman would also deprive Defendants of his expertise

17   and work product obtained in the *Tallman* case in which he is lead trial counsel.

18          Plaintiffs' Response to Defendants' Emergency Motion to Strike (Dkt. #63) indicates the motion

19   is unnecessary and improper because the Motion to Disqualify Mr. Newman is not ripe for adjudication.

20   Rather, the court should resolve the pro hac vice admission issue before it and defer making any

21   decision on whether Mr. Newman should be disqualified as trial counsel until the discovery needed to

22   establish this issue is conducted.  Plaintiffs counsel indicated he filed the partial opposition only to

23   preserve the potential disqualification issue for a future ruling.  Plaintiffs' counsel represents that he

24   offered to agree to Mr. Newman's pro hac vice application without any limitation as long as his

25   agreement was not deemed as a waiver to Plaintiffs' right to seek disqualification as trial counsel later.

26   However, Defendants' counsel refused to enter into any stipulation and instead filed this "unnecessary

27   and unripe" motion to strike.  Plaintiffs argue that counsel has an obligation to explore whether or not

28   Mr. Newman is a necessary trial witness.  The need to explore his knowledge is the reason Plaintiffs

1   agreed to withdraw, without prejudice, their motion to disqualify Mr. Newman as trial counsel.

2   Plaintiffs' counsel requested a Rule 30(b)(6) deposition on Defendants' affirmative defenses.  Once this

3   deposition is taken, the parties will be armed with sufficient facts to evaluate the potential

4   disqualification of Mr. Newman as trial counsel.  Plaintiffs' counsel accuses defense counsel of

5   attempting to obtain unfair advantage by seeking a premature ruling on the issue of Mr. Newman's

6   disqualification without conducting the necessary discovery to determine whether he has relevant

7   knowledge that makes him a necessary trial witness.

8          Defendants filed a reply pointing out that the November 24, 2009, letter from Mr. Newman to

9   Ms. Chan of the USDOL was produced in discovery in the *Tallman* case more than two years ago.

10  Thus, counsel for Plaintiffs has known about the letter for more than two years without raising the issue

11  of Mr. Newman's disqualification.  Although Defendants believe the motion to disqualify is unfounded

12  and inappropriate, Defendants argue they must plan and take precautions in the unlikely event the court

13  sees things differently and they are required to obtain new trial counsel in this case.  Defendants argue

14  the court should stay discovery and other proceedings until this controversy is resolved.  The court

15  should also refuse to consider Plaintiffs' motion to disqualify and motion to compel Mr. Newman's

16  deposition.  Finally, the court should grant Mr. Newman's pro hac vice petition without limitation and

17  put an end to this controversy holding that Plaintiffs have waived the right to seek Newman's

18  disqualification given Plaintiffs' unreasonable delay in addressing this issue with the court.

19  **III.    Law and Analysis**

20         An avalanche of moving and responsive papers have been filed in this case since Plaintiffs'

21  initial motion to disqualify Mr. Newman as Defendants' counsel, and compel his deposition.  Each side

22  accuses the other of abusive litigation tactics.  Each side accuses the other of requesting unfounded

23  relief on matters not yet ripe for decision.  Each side asks for relief not initially requested in their initial

24  motion and countermotions.

25         Counsel for Plaintiffs filed a motion to disqualify Mr. Newman and then withdrew it.  After

26  withdrawing the motion for disqualification, counsel for Plaintiffs filed a partial objection to Mr.

27  Newman's pro hac vice application which attached the motion to disqualify as an exhibit.  This

28  prompted Defendants to seek a stay of all proceedings in this case until a final resolution or decision on

1   whether Mr. Newman should be disqualified as trial counsel in this case.  Defendants argue there is no

2   factual basis for the court to make a decision to disqualify Mr. Newman, and Plaintiffs have not taken

3   the necessary predicate steps to make the issue ripe for decision.  Nevertheless, the court should decide

4   whether Mr. Newman should be disqualified as trial counsel by finding Plaintiffs' unreasonable delay in

5   raising the issue constitutes a waiver.

6          Without enumerating them all, the court finds counsel for both sides have taken patently

7   inconsistent positions.  Their mutual distrust and dislike of one another is palpable and has brought

8   proceedings in this case to a virtual halt.  Defendants effectively gave themselves the "emergency stay"

9   they requested by simply refusing to engage in any discovery other than taking the deposition of Mr.

10  Coffee and Mr. Barnes which the court previously ordered.  Plaintiffs moved to disqualify Mr. Newman

11  before even asking to take his deposition asserting he was a necessary witness at trial in this case with

12  little or no factual basis.  Plaintiffs have indeed had the March 2009, letter from Mr. Newman to Ms.

13  Chan since 2009.  For more than two years Plaintiffs have never claimed Mr Newman was a necessary

14  trial witness or requested to take his deposition until shortly before the *Tallman* trial, and shortly before

15  the discovery cutoff in this case which has been extended twice at the parties' request.

16         Plaintiffs withdrew their motion to disqualify Mr. Newman, but attached a copy of the motion to

17  disqualify to their partial opposition to Mr. Newman's pro hac vice application.  Plaintiffs state this was

18  done because defense counsel would not agree to stipulate that by withdrawing the motion to disqualify

19  Mr. Newman Plaintiffs had not waived their right by not filing the motion earlier.  Both sides argue the

20  motion to disqualify is not properly before the court because the court lacks a sufficient factual basis to

21  decide the matter and it is "unripe."  Counsel for Plaintiffs ask that the court leave the door open until

22  after discovery is complete.  Counsel for Defendants argue the court should decide the issue now and

23  find waiver because Plaintiffs did not address the issue for more than two years after receiving

24  discovery of the March 24, 2009, letter which gives rise to Plaintiffs' request to depose Mr. Newman

25  and potentially disqualify him as trial counsel.

26         There is no motion to disqualify Mr. Newman before the court.  It was withdrawn.  In the Notice

27  of Withdrawal of the Motion (Dkt. #53), counsel for Plaintiffs requested withdrawal of the motion

28  without prejudice and that the court "take no action on such motion."  Despite withdrawing the motion,

1   counsel for Plaintiff filed a Partial Objection to Mr. Newman's Pro Hac Vice Application (Dkt. #57)

2   which attached a copy of the withdrawn motion to disqualify as an exhibit.  The court finds that the

3   motion to disqualify was not founded on fact or law.  At the time the motion was filed, Plaintiffs lacked

4   a basis for asserting that Mr. Newman was a necessary witness at trial.  Although Defendants have

5   raised good-faith reliance on rulings made by the USDOL as affirmative defenses to this action,

6   Defendants have not relied on the advice of counsel defense.  Rather, the Defendants' affirmative

7   defenses hinge on the findings made by the USDOL about Defendants' trailer guard program and its

8   audit of the Defendants' employment and wage and hour practices.

9       Mr. Newman was admitted pro hac vice in the *Tallman* case and was designated as lead trial

10  counsel without objection from Plaintiffs' counsel.  The case proceeded to trial, although a mistrial was

11  declared after two days.  The same counsel for Plaintiffs in *Tallman* represents the Plaintiffs in this

12  case.  This case involves nearly identical issues about the same employers' FLSA wage-and-hour

13  compliance for the manner in which construction site trailer guards who reside on site are compensated.

14  The May 24, 2009, letter from Mr. Newman to Ms. Chan was produced in the *Tallman* case more that

15  two years ago.  Yet, there was no suggestion that Mr. Newman was disqualified from serving as trial

16  counsel as a necessary witness because of his communications with the USDOL.  There is simply no

17  basis in the record to disqualify Mr, Newman as trial counsel in this case.  As there is no basis to

18  disqualify Mr. Newman as trial counsel, there is no basis to attach a withdrawn motion in partial

19  opposition to Mr. Newman's pro hac vice application.  The court will therefore grant Defendants'

20  motion to strike the withdrawn motion to disqualify as an exhibit to Plaintiffs' partial opposition to Mr.

21  Newman's pro hac vice application.

22      The court will also deny Plaintiffs' motion to compel Mr. Newman's deposition.  Motions to

23  depose an attorney for an opposing party are not absolutely prohibited, but are disfavored.  *See, e.g.*

24  *Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 255 F.R.D. 340, 344 (W.D.N.Y. 2009).

25      In *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), the Eighth Circuit

26  recognized that allowing the deposition of opposing counsel "not only disrupts the adversarial system

27  and lowers the standards of the profession, but it also adds to the already burdensome time and costs of

28  litigation."  *Shelton,* 805 F.2d, 1323, 1327 (8th Cir. 1986).  Attempting to take the deposition of

1 opposing counsel causes pretrial delays to resolve work-product and attorney-client objections and

2 collateral issues raised by the attorney's testimony. *Id*. The practice also "detracts from the quality of

3 client representation, and has a 'chilling effect' on attorney-client representations." *Id*. For these

4 reasons many courts have found that the depositions of opposing counsel should be limited to situations

5 where: (1) no other means exist to obtain the information sought; (2) the information is both relevant

6 and non-privileged; and (3) the information is crucial to the preparation of the case. *Id. See* also

7 *American Casualty v. Krieger,* 60 F.R.D. 582, 589 (S.D. Cal. 1995); *Harrison v. Chicago Tribune Co.,*

8 134 F.R.D. 232, 233 (N.D. Ill. 1990); *In re: I Re Souse Brothers Ocean Towing v. T-V Ocean Service,*

9 144 F.R.D. 111, 116 (D. Or. 1991).

10       The Nevada Supreme Court recently addressed under what circumstances a district court may

11 allow a party to depose an opposing party's attorney in *Club Vista Financial Services v. District Court*,

12 276 P.3d 246 (NV 2012).  Federal Rule of Civil Procedure 30 and Nevada Rule of Civil Procedure 30

13 allow a party to depose "any person" by oral examination and do not expressly prohibit the taking of an

14 opposing counsel's deposition.  Nevertheless, the Nevada Supreme Court agreed with the Eight

15 Circuit's decision in *Shelton* that the practice should be discouraged because it is disruptive of the

16 adversary nature of our judicial system. *Id*. at 249 citing *Shelton*, 805 F.2d at 1327.  The Nevada

17 Supreme Court therefore adopted *Shelton's* three-factor test for determining when a party may take the

18 deposition of opposing counsel.

19       The court finds that Plaintiffs have not established grounds for taking Mr. Newman's

20 deposition.  Plaintiffs have not shown that they have no other means to obtain the information about

21 communications between the Defendants and the USDOL upon which Defendants base their

22 affirmative defenses.  The March 2009, letter from Mr. Newman to Ms. Chan was produced in

23 discovery and no one claims it is privileged.  As the letter was provided to a non-party outside the

24 attorney-client privilege there is no grounds for asserting privilege with respect to the letter.

25 Defendants affirmatively represent that they are not relying on Mr. Newman's advice to them to support

26 their good-faith affirmative defenses.  Rather, Defendants base their affirmative defenses on the

27 positions taken by the USDOL that their employment practices were lawful and in compliance with the

28 FLSA.

1    Plaintiffs may obtain discovery of all facts and legal bases supporting Defendants' affirmative

2 defenses by other means, such as interrogatories, requests for production, and the deposition of

3 Defendants' Rule 30(b)(6) designee.  The court finds that the Plaintiffs have not met their burden under

4 *Shelton, American Casualty,* and the other cases cited in this order that Mr. Newman's deposition is

5 crucial to their case.  However, as defendants have affirmatively represented that they are not relying on

6 Mr. Newman's advice to support their affirmative defenses, the court will preclude the Defendants from

7 claiming at trial, in motion practice, or for any other purpose in this case, that Defendants relied in good

8 faith on Mr. Newman's legal advice that the employment practices at issue in this lawsuit complied

9 with the FLSA in support of their defenses under §259 and §260.  Defendants will also be precluded

10 from supporting their position on the applicable statute of limitations on Mr Newman's advice.

11    Having reviewed and considered the voluminous moving and responsive papers,

12       **IT IS ORDERED** that:

13       1.    Plaintiffs' Motion to Compel Deposition of Mr. Newman (Dkt. #52) is **DENIED**.

14       2.    As Defendants affirmatively represent that they have not, and will not, rely on the advice

15             of Mr. Newman to support their affirmative defenses, Defendants shall be precluded

16             from claiming at trial, in motion practice, or for any other purpose in this case that they

17             relied in good faith on Mr. Newman's legal advice that the employment practices at

18             issue in this lawsuit complied with the FLSA in support of their §259 and §260

19             affirmative defenses, or in support of their defense that a two-year, rather than a three-

20             year statute of limitation applies because any violation of the FLSA was non-wilful.

21       3.    Defendants' Emergency Motion to Strike (Dkt. #61) is **GRANTED** to the extent that

22             Exhibit "A" to Plaintiffs' Partial Opposition to Mr. Newman's Admission for Pro Hac

23             Vice (Dkt. #57) is **STRICKEN.**

24       4.    Defendants' Emergency Motion to Stay (Dkt. #62) is **DENIED**.

25    Dated this 7th day of January, 2013.

26

27    _____
      Peggy A. Leen

28    United States Magistrate Judge