**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BERYL HARTER, et al., | ) |
| Plaintiffs, | ) Case No. 2:12-cv-00084-MMD-PAL |
| vs. | ) **ORDER** |
| CPS SECURITY (USA), INC., et al., | ) (Mot Compel - Dkt. #93) |
| Defendants. | ) |

Before the court is Plaintiffs' Motion to Compel Defendants to Disclose Certain Attorney-Client Communications (Dkt. #93). The court has considered the Motion, Defendants' Opposition (Dkt. #98), Plaintiffs' Reply (Dkt. #99), and the arguments of counsel at the hearing conducted May 14, 2013. Leon Greenberg appeared on behalf of the Plaintiffs; Carol Zucker, Timothy Roehrs, and Jim Newman appeared on behalf of the Defendants.

**BACKGROUND**

The Complaint (Dkt. #1) in this case was filed January 18, 2012, and involves an action under the Fair Labor Standards Act ("FLSA"). The named Plaintiff, Beryl Harter, was employed as a "trailer guard" by Defendants CPS and worked at construction sites to provide security services. He alleges that he and other similarly-situated trailer guards were required to reside in a small one-room trailer without running water. Trailer guards were paid minimum hourly wage for "patrol time" at the site and expected to remain at the trailer for eight hours every night, seven days a week, on call. Plaintiffs allege that trailer guards were not compensated for their on call work unless they were required to respond to security alarms at the construction site. Because of the number of limitations the Defendants imposed on activities of trailer guards during on call time, Plaintiffs assert the time is compensable for FLSA minimum wage purposes. Plaintiffs also claim that the Defendants improperly deducted thirty dollars a

1  week from each trailer guard's paycheck for a maintenance fee for the trailer provided to each trailer
2  guard. This deduction is alleged to violate the minimum wage requirement of the FLSA as the trailer
3  guards were only paid minimum wage, and the thirty dollar per week deduction compensated trailer
4  guards below minimum wage.

5  On April 10, 2013, the court conducted an informal telephonic case management and scheduling
6  conference at the request of counsel for the parties. Counsel for the parties advised the court that they
7  had a discovery dispute concerning the attorney-client privilege, work product privilege, and at issue
8  waiver. Plaintiff noticed a Rule 30(b)(6) deposition requesting testimony binding the Defendants on the
9  bases for certain good faith affirmative defenses raised in this case, and the deposition was scheduled.
10 However, both sides agreed that it would be more cost effective and efficient to obtain a ruling from the
11 court on the at issue waiver of the attorney-client and work product privilege concerning advice in-
12 house counsel and co-counsel for Defendants, Jim Newman, provided to Defendants before the Rule
13 30(b)(6) deposition. Counsel for the parties represented that a pre-deposition ruling would avoid
14 multiple sessions of the deposition.

15 At the time of the informal dispute resolution conference, counsel for Defendants was in the
16 process of preparing responses to Plaintiffs' request for production of documents which request
17 documents relevant to this dispute and expected to serve opposing counsel with the Defendants'
18 responses within the next week. Counsel for Plaintiffs indicated he would send opposing counsel a
19 letter outlining the subject matter areas on which testimony would be requested from Defendants' Rule
20 30(b)(6) designees relevant to this dispute. Both sides agreed that the issue could be adequately
21 addressed and decided without proceeding with the Rule 30(b)(6) deposition and obtaining a deposition
22 transcript of the specific questions asked and answers to which instructions not to answer were made.

23 Based on the parties' joint request for a pre-deposition ruling, the court approved the parties'
24 proposed briefing schedule and request to allow the Rule 30(b)(6) deposition at issue in this dispute to
25 take place after the current discovery cutoff.

26 / / /
27 / / /
28 / / /

# DISCUSSION

## I. Motion to Compel (Dkt. #98).

In the current Motion, Plaintiffs seek to compel the Defendants to disclose certain attorney-client communications. Specifically, Plaintiffs seek an order compelling the Defendants to disclose all attorney-client oral and written communications concerning pre-litigation legal advice the Defendants received on whether Defendants' trailer guard compensation policy complied with the FLSA. Plaintiffs noticed the deposition of Defendants' Rule 30(b)(6) designee concerning Defendants' affirmative defenses. Defendants served objections to the notice and a "Statement Outlining Facts in Support of Affirmative Defenses," which is attached as Exhibit "D" to the Plaintiffs' Motion to Compel.

Plaintiffs argue that Defendants have placed the advice they received from counsel regarding their trailer guard compensation policy and whether or not it complied with the FLSA at issue by raising three affirmative defenses in this case. By placing their good-faith belief that they complied with the FLSA at issue, Plaintiffs argue the Defendants have waived the attorney-client and work product privilege on this subject matter. Plaintiffs contend that the Defendants cannot use a pre-litigation "state of mind" defense as a sword while simultaneously shielding from disclosure pre-litigation attorney-client communications relevant to that state of mind. Plaintiffs maintain that by placing their pre-litigation actions, knowledge and good-faith belief about the FLSA's legal requirements at issue, "Defendants have made the full bevy of their pre-litigation communications with counsel about such issues subject to discovery." Plaintiffs also argue that because Defendants have disclosed communications with Ted Huebner with respect to their pre-litigation FLSA compliance, Defendants have waived the attorney-client privilege on the subject matter of FLSA legal advice.

Defendants oppose the Motion, arguing that the court has already ruled on this issue in another context, and Defendants have never taken an affirmative step to base a defense on the content of confidential, privileged communications Defendants have had with counsel. Thus, Defendants argue the attorney-client privilege has not been waived. The Defendants have asserted an affirmative defense that they relied in good faith upon the U.S. Department of Labor's ("DOL") approval of the policies in dispute in this case. This is a defense under 29 U.S.C. § 259 which is commonly referred to as the FLSA safe harbor provision. A good faith reliance on a written administrative regulation, order, ruling,

approval or interpretation of minimum wage or overtime compensation policies by the DOL is a complete defense to liability under this safe harbor provision. Defendants base their defense on regulations, enforcement guidance, and opinions received from the DOL. Defendants argue that Plaintiffs are not entitled to all pre-litigation attorney-client communications on the subject matter of the trailer guard compensation policy and its compliance with all applicable FLSA requirements because they asserted the FLSA safe harbor defense.

Defendants have also asserted a second affirmative defense under § 260 of the FLSA. 29 U.S.C. § 260 authorizes a court to withhold or reduce liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. Defendants acknowledge that in asserting a § 260 affirmative defense, the employer bears the burden of proving that it acted in good faith. Finally, Defendants have asserted a § 255 defense to this FLSA action. Defendants acknowledge that while they pled it as an affirmative defense, it is actually a defense to an element of Plaintiffs' claim that Defendants wilfully violated the FLSA. Pursuant to § 255, an employee who proves that an employer wilfully violated the FLSA is entitled to a three-year statute of limitations instead of a two-year statute of limitations. To extend the statute of limitations from two years to three years for a wilful violation, the Plaintiff employee must prove either that the employer knew that its employment policies were prohibited by the FLSA, or acted in reckless disregard.

Defendants dispute that asserting these two affirmative defenses, and attacking Plaintiffs' burden of proof on the issue of wilful violation, places Defendants' state of mind regarding their compliance with the FLSA at issue to a degree that waives their pre-litigation attorney-client communications. Specifically, Defendants dispute that they have abused the attorney-client privilege by using it as a sword against the Plaintiffs. Defendants have not and do not claim that they should escape liability for illegal acts because of reliance upon the advice of counsel. Defendants represent in this Motion, as they have in previous motions before the court, that they will not rely upon the substance of any confidential attorney-client communications to support any of their defenses in this case.

Relying on *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 258 (E.D. Mich. 2008), Defendants argue that they have not waived the attorney-client privilege by merely asserting a good-faith defense. In this case, the Defendants have not placed the content of any attorney-client privileged communications at issue, and therefore, there has been no at issue waiver.

Responding to Plaintiffs' arguments about the advice received from Ted Huebner, Defendants argue that although Mr. Huebner is trained as a lawyer and licensed to practice law, he was not engaged in the capacity of a lawyer providing confidential legal advice while he served as a management consultant to the Defendants. Rather, Defendants' witness, Mr. Coffey, testified CPS hired Mr. Huebner as a management consultant to provide advice on FLSA compliance. CPS has never sought to withhold any communications between Mr. Huebner and government regulators, or between Mr. Huebner and Mr. Coffey, or between Mr. Huebner and anyone else from discovery in this case. The Defendants have also not claimed that any of Mr. Huebner's communications are privileged. Rather, CPS has objected to disclosing privileged communications with attorneys with whom it has had confidential communications. CPS also did not object to deposition questions to Mr. Coffey that asked him about discussions with Mr. Huebner. Mr. Coffey testified at his deposition that Mr. Huebner was a management consultant who created the trailer guard policy and was hired to ensure that it complied with applicable laws. Mr. Coffey testified that Mr. Huebner was the one CPS relied upon in making sure it was in compliance with all federal and state wage and hour laws. The fact that Mr. Huebner is trained as a lawyer, and is a member of the bar does not constitute a reliance upon the advice of counsel defense. Rather, Mr. Huebner was a business executive trained as a lawyer who provided the Defendants with advice on federal and state wage and hour laws which the Defendants have voluntarily disclosed. As a management consultant, his advice was not confidential or offered in his capacity as a lawyer. As such, the Defendants did not waive the attorney-client privilege with respect to all confidential legal advice on compliance with state and federal minimum wage requirements by disclosing the advice they relied upon from Mr. Huebner in asserting their defenses in this case.

The Defendants rely upon applicable Ninth Circuit authority which establishes a three-prong test for determining whether an at issue or implied waiver of the attorney-client privilege has occurred. In the Ninth Circuit, this is determined by examining whether: 1) a party is asserting the privilege as a

1    result of some affirmative act, such as filing a suit; 2) a party asserting privilege has taken an
2    affirmative act to put the privileged information at issue; and 3) allowing the privilege would deny the
3    opposing party "access to information vital to its defense." *United States v. Amlaini*, 169 F.3d, 1189,
4    1195 (9th Cir. 1999) (citing *Home Indemnity Co. v. Lane Powell Moss & Miller*, 43 F.3d, 1322, 1326
5    (9th Cir. 1995)).
6           In this case, Mr. Coffey and Mr. Barnes have testified on behalf of the Defendants that their
7    understanding that the trailer guard compensation policies complied with the FLSA was based on their
8    direct conversations with 1) investigators from the DOL, and 2) with Mr. Huebner, neither of which
9    were intended to be confidential.
10          Plaintiffs' reply that the Defendants have asserted affirmative defenses that rest on their claims
11   that 1) they acted with appropriate diligence to ascertain the legal requirements of the FLSA, and 2)
12   they acted in good faith to comply with these legal requirements.  To support these claims, they have
13   proffered the testimony of an attorney, Ted Huebner, about those legal requirements, as well as
14   opinions received from the DOL.  These defenses are based on Defendants' understanding of the law
15   and their attempts to comply with the law.  Thus, Defendants should be required to disclose everything
16   they were told about the law by all of the sources they consulted including counsel other than Mr.
17   Huebner.  A contrary ruling is "rife with the potential for fraud."
18          Plaintiffs dispute that they are relying upon an at issue waiver of the attorney-client privilege
19   under a mere relevancy standard.  The overarching goal of the judicial system is to foster discovery of
20   the truth.  In this case, the Defendants have claimed that they acted based upon their knowledge of the
21   law which they acquired in good faith and should therefore not be able to refuse to disclose the
22   knowledge they actually obtained from all of their counsel with whom they consulted about the FLSA.
23   Defendants have voluntarily interjected a claim or defense based on their legal knowledge of the FLSA
24   requirements, and should not be permitted to obstruct the truth finding process by barring inquiry into
25   the actual legal knowledge communicated to them by all of their counsel.  Under these circumstances,
26   Plaintiffs argue that Defendants have impliedly waived the attorney-client privilege and that fairness
27   dictates there has been an at issue waiver of all advice on the subject matter of the trailer guard
28   compensation policy's compliance with the FLSA.

# DISCUSSION

## I. The Attorney-Client Privilege.

The attorney-client privilege protects confidential disclosures made by a client to an attorney to obtain legal advice and an attorney's advice in response to such disclosures. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (quotation omitted), *cert. denied*, 520 U.S. 1167 (1997). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co., v. United States,* 449 U.S. 383, 389 (1981). It serves to protect confidential communications between a party and its attorney in order to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The privilege applies where legal advice of any kind is sought from a professional legal advisor in her capacity as such, and the communication relates to that purpose, and is made in confidence by or for the client. *Id.* The Ninth Circuit has adopted Dean Wigmore's articulation of the elements of the attorney-client privilege: (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at that instance, permanently protected, (7) from disclosure by the client or by the legal advisor, and (8) unless the protection is waived. *In re: Fischel,* 557 F.2d 209, 211 (9th Cir.1977); *Admiral Insurance Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1492 (9th Cir.1989).

"The burden is on the party asserting the privilege to establish all the elements of the privilege." *United States v. Martin,* 378 F.3d 988, 999–1000 (9th Cir.2002). The party asserting the attorney-client privilege must establish the attorney-client relationship and the privileged nature of the communication. *United States v. Bauer,* 132 F.3d 504, 507 (9th Cir.1997). A party claiming the attorney-client privilege "must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *Martin,* 278 F.3d at 1000. Blanket assertions of attorney-client privilege are "extremely disfavored." *Id.* Additionally, "the communication must be between the client and lawyer for the purpose of obtaining legal advice." *Id.* "The fact that a person is a lawyer does not make all communications with that person privileged." *Id.* at 999. The party asserting the
/ / /

privilege must, at a minimum, make a prima facie showing that the privilege protects the information the party intends to withhold. *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 (9th Cir.1992).

Not all communications between an attorney and client are privileged. Information such as the identity of the client, the amount of the fee, the identification of payment by case file name, the general purpose of the work performed, and whether an attorney coached a client in his testimony is not privileged. *See, e.g., United States v. Carrillo*, 16 F.3d 1046, 1050 (9th Cir. 1994); *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). Similarly, when an attorney is merely communicating information, such as an order to appear in court, the communications between the attorney and the client are not privileged. *United States v. Gray*, 876 F.2d 1411 (9th Cir. 1989) (holding attorney-client privilege did not preclude lawyer from testifying he advised client of the sentencing date in prosecution of client for failure to appear); *McKay v. Commissioner*, 886 F.2d 1237 (9th Cir. 1989) (holding testimony of taxpayer's attorney that the gave taxpayer a copy of deficiency notice from the IRS in ample time to file a petition timely did not violate the attorney-client privilege).

The attorney-client privilege is a rule of evidence; it has not been held a constitutional right. *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1980). The party asserting the attorney-client privilege has the burden of proving the attorney-client privilege applies. *Id*. at 25. "One of the elements that the asserting party must prove is that it has not waived the privilege." *Id*. The attorney-client privilege is waived when communications are made in the presence of third parties. *United States v. Gann*, 732 F.2d 714, 723 (9th Cir.), *cert. denied*, 469 U.S. 1034 (1984). It is well established that "voluntary disclosure of the content of a privileged attorney communication constitutes a waiver of the privilege as to all other such communications on the same subject." *Id*. In *Weil*, the Ninth Circuit recognized that waiver of the privilege "may be effected by implication" and by inadvertent disclosure. *Id*. Additionally, "the subjective intent of the party asserting the privilege is only one factor to be considered in determining whether waiver should be implied." *Id*.

Courts narrowly construe the privilege and recognize it "only to the limited extent that ... excluding relevant evidence has a public good transcending the normal predominate principal of

1  utilizing all rational means for ascertaining the truth." *Trammel v. United States,* 445 U.S. 40, 50
2  (1980); *Weil v. Inv./Indicators Research & Mgmt., Inc.,* 647 F.2d 18, 24 (9th Cir.1981) ( "Because it
3  impedes full and free discovery of the truth, the attorney-client privilege is strictly construed").
4  Similarly, because the attorney-client privilege is in derogation of the truth-finding process and must be
5  strictly construed, "the privilege should attach only where extending its protection would foster more
6  forthright and complete communication between the attorney and her client *about the client's legal*
7  *dilemma.*" *United States v. ChevronTexaco Corp.,* 241 F.Supp.2d 1065, 1070 (N.D.Cal.2002)
8  (emphasis in original).

9  Generally, the voluntary disclosure of privileged attorney-client communications constitutes a
10 waiver of the privilege as to all other such communications dealing with the same subject matter.
11 *United States v. Zolin,* 809 F.2d 1411, 1415 (9th Cir.1987), *rev'd in part on other grounds by* 491 U.S.
12 554 (1989). "In order to establish the applicability of the attorney-client privilege to a given
13 communication, the party asserting the privilege must affirmatively demonstrate non-waiver." *Id.* Any
14 disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship
15 waives the privilege. *Id.* The Ninth Circuit employs a three-prong test to determine whether a waiver
16 of the attorney-client privilege has occurred. *United States v. Amlani,* 169 F.3d 1189, 1195 (9th Cir.
17 1999). First, the court considers whether a party is asserting the attorney-client privilege as a result of
18 some affirmative act. *Id*. Second, the court examines whether the party asserting the privilege through
19 an affirmative act has put the privileged information at issue. *Id*. Third, the court evaluates whether
20 allowing the privilege would deny the opposing party access to information vital to its case. *Id*.

21 There are many contexts in which the courts have held that a party waives the attorney-client
22 privilege by affirmatively relying on the advice of counsel to support a claim or defense. *See, e.g.,*
23 *Trans World Airlines, Inc. v. Hughes,* 332 F.2d 602, 615 (2nd Cir.1964), *cert. denied,* 380 U.S. 248, 85
24 S.Ct. 934, 13 L.Ed.2d 817 (1965) (attorney client privilege waived where the advice of counsel defense
25 raised in an antitrust case and attorney had submitted an affidavit to the Civil Aeronautics Board);
26 *Livingstone v. North Belle Vernon Boro.,* 91 F.3d 515, 537 (3rd Cir.1996) (civil rights plaintiff who
27 asserted she relied on advice of counsel in waiving the right to sue put advice of counsel in issue and
28 waived privilege); *United States v. Amlani,* 169 F.3d 1189, 1195-96 (9th Cir.1999) (client asserting he

discharged attorney for certain reasons cannot invoke the attorney-client privilege to deny government counsel access to the information needed to refute claim); *Tsai-Son Nguyen v. Excel Corp.,* 197 F.3d 200 (5th Cir.1999) (executive deponents claiming during deposition that they relied on advice of counsel to substantiate good faith defense to violation of federal law waived attorney-client privilege, and opposing counsel could depose the attorneys on whose advice deponents testified they relied); *Johnson v. Rauland-Borg Corp.,* 961 F.Supp. 208, 211 (N.D. Ill. 1997) (employer who asserted it acted reasonably by employing outside attorney to investigate Title VII claim waived privilege).

The work-product doctrine is aimed to protect the effectiveness of a lawyer's trial preparation by immunizing his or her materials from discovery. *Handgards, Inc. v. Johnson & Johnson,* 413 F. Supp. 926, 930 (N.D. Cal. 1976) (citing *Kirkland v. Morton Salt Co.,* 46 F.R.D. 28 (N.D.Ga.1968)); *Developments in the Law-Discovery,* 74 Harv. L.Rev. 940, 1045 (1961). The court has a duty to balance plaintiffs' need to conduct discovery with the right of the defendant, and its counsel, to retain the benefits of the lawyers' work for the client free from intrusion by opposing parties and their counsel. The same rationale applies to the waiver of work-product immunity. As the court held in *Handgards,* 413 F.Supp. at 931-33, although attorneys' work-product is ordinarily protected, once a client decides to call the attorneys as witnesses, the work-product protection must give way to full disclosure on any issue to which they will testify. Anything less would permit manipulation of the truth.

II.     **Analysis.**

In this case, the Defendants have asserted § 259 and § 260 affirmative defenses. The Defendants also claim that they are entitled to a two-year statute of limitations instead of a three-year statute of limitations if the court finds their trailer guard compensation policy violated the FLSA because the violation was not wilful. These defenses are based on Defendants' claims that they received advice from Ted Huebner, a management consultant who is also a lawyer, and opinions from the DOL on the legality of their trailer guard compensation policies. The court finds that by asserting these two affirmative defenses, and defending against Plaintiffs' claim of wilful violation, the Defendants have not placed all pre-litigation attorney-client communications on the same subject matter at issue. The court also finds no implied waiver of the attorney-client privilege has occurred because the Defendants have asserted these same defenses.

Defendants have put Mr. Huebner's advice at issue by disclosing that they relied on his advice in his capacity as a management consultant. His advice is fully discoverable. However, by relying on his advice, the Defendants have not waived all confidential attorney-client communications on the same subject matter concerning all advice received from all counsel on the trailer guard compensation policy's compliance with the FLSA. The fact that Mr. Huebner is a management consultant who is also a lawyer admitted to the bar does not compel a different result. On the record before this court, Defendants have not sought legal advice from Mr. Huebner in his capacity as a lawyer. Rather, the uncontroverted testimony in the record is that Mr. Huebner was hired as a management consultant to develop the trailer guard compensation policy and ensure that it complied with all applicable state and federal wage and hour laws. Mr. Huebner's communications were not held in confidence by the Defendants and Defendants have never claimed that Mr Huebner's advice was privileged.

Defendants have the burden of establishing their § 259 and § 260 affirmative defenses. They will be required to fully disclose all legal and factual bases for asserting these defenses in discovery. Defendants must disclose any documents supporting these affirmative defenses and must produce one or more fully educated Rule 30(b)(6) designees to bind the employer on the bases for these defenses. Defendants will not be permitted to use any information or testimony they have failed to disclose at trial, in motion practice, or for any other purpose in this case.

The Plaintiffs are entitled to full disclosure of all of the facts and bases upon which Defendants base their § 259 and § 260 affirmative defenses, and defend against the Plaintiffs' claims of wilful violation. The Defendants have repeatedly advised opposing counsel and the court that they support these defenses based on Mr. Huebner's advice and the opinions Defendants received from the DOL. By doing so, the Defendants have not relied on privileged, confidential advice received from pre-litigation counsel to support their affirmative defenses or to defend against Plaintiffs' claim of a wilful violation. By asserting these defenses, the Defendants will not necessarily or inevitably be forced to reveal privileged communications. Rather, they will be required to fully disclose all of the facts and bases, including the identity of all persons providing the information on which these defenses are based. Allowing Defendants to maintain the attorney-client privilege for communications with their in house or other legal advisers who were acting as legal advisers and providing confidential advice will not

1  deprive Plaintiffs of information vital to their case because Defendants do not base these defenses on
2  any advice other than that received from Mr Huebner and the DOL. *See, e.g., Kaiser Foundation*
3  *Health Plan, Inc. v. Abbott Laboratories, Inc.,* 552 F.3d 1033, (9th Cir. 2009).

4        In *Kaiser* the plaintiff claimed that the defendant's defense to a restraint of trade claim was
5  based on the advice of its attorneys, and that plaintiff should therefore have had access to otherwise
6  privileged attorney-client communications. The trial court prevented the Plaintiff from discovering
7  privileged communications of defendant's counsel. On appeal, the Ninth Circuit affirmed the trial court
8  finding that the defendant had not relied on the advice of counsel defense at trial. The defendant
9  presented evidence that, regardless of the assurances it received from its counsel and its parent
10 company's counsel that it would prevail on the merits of the litigation, its Board of Directors did not
11 want to take the business risk involved. The Ninth Circuit therefore concluded the defendant did not
12 assert an advice-of-counsel defense, and that the trial court did not abuse his discretion in denying the
13 plaintiff access to the defendant's privileged communications. The court finds that the Defendants
14 have not relied on an advice of counsel defense.

15       There is no suggestion in the record before the court that Mr. Huebner relied on confidential
16 attorney-client communications in rendering his opinions in his capacity as a management consultant.
17 Any information that he was provided, including the source of the information, even if it came from an
18 attorney, is subject to full disclosure. Similarly, any information that was disclosed to the DOL which
19 the DOL used in rendering opinions that the Defendants relied upon is subject to full disclosure, even if
20 the information came from counsel. In both circumstances, the information communicated to Mr.
21 Huebner in his capacity as a management consultant, and to the DOL, was not intended to constitute
22 confidential attorney-client communications for the purpose of providing legal advice to the employer.
23 Rather, in both circumstances, it was information that was conveyed by the Defendant employer to a
24 Defendant management consultant and to the DOL to receive opinions upon which the Defendants now
25 rely in defending this case.

26       The Defendants have not taken affirmative steps to interject the advice of any lawyer acting in
27 the capacity of a confidential legal advisor to assert these affirmative defenses or to defend against
28 Plaintiffs' claim of wilful violation. The Defendants have not affirmatively offered testimony or

documents that they have consulted with any attorney other than Mr. Huebner, acting in his capacity as a management consultant, to support these defenses.  For these reasons, the court finds the Defendants have not waived the attorney-client privilege or qualified work product immunity on the entire subject matter of FLSA compliance by putting confidential attorney-client privileged communications about the trailer guard compensation policy "at issue."  The Defendants have not put "at issue" all privileged communications on the subject of the trailer guard compensation policy and whether or not it complied with the FLSA.  Confidential communications with in house or outside counsel have not been partially disclosed.  The disclosures which have been made to support the defenses the employer has asserted are limited to the advice the Defendants received from Mr. Huebner who was not acting in his capacity as a legal advisor in developing the trailer guard compensation policy and ensuring that it complied with all applicable state and federal wage and hour laws.  Similarly, communications to and from the DOL, and the DOL's opinions about whether the policy complied, do not constitute a waiver of all confidential attorney-client communications on the same subject.

For the reasons stated,

**IT IS ORDERED** that Plaintiff's Motion to Compel Defendants to Disclose Certain Attorney-Client Communications (Dkt. #93) is **DENIED**.

Dated this 14th day of June, 2013.

_____
Peggy A. Leen
United States Magistrate Judge